## 51974. CAMPO CONSTRUCTION, INC. v. STEMBRIDGE.

MARSHALL, Judge.

This appeal is from a judgment at a bench trial in favor of Stembridge, plaintiff below, in the amount of $15,260, as commissions due but not paid under a contract of employment between Stembridge and Campo Construction, Inc., defendant below. There are 14 enumerations of error but each deals with the sufficiency of the evidence to support the findings, conclusions and judgment of the trial court. *Held:*

The evidence indicates that Campo Construction was under contract to build quick food outlets for the McDonald system nationwide during a period including 1970-1974. Campo Construction employed Stembridge during the same period and as its Atlanta regional manager during 1972-1974. In addition to his salary, Stembridge was entitled to 10% of the net construction profits arising from outlets constructed in the Atlanta region. In his petition as amended, Stembridge alleged that Campo Construction during the period October, 1973, to September 30, 1974, built 22 outlets at an average net profit of $11,100 each, resulting in a total net profit of $242,000, equaling a commission of $24,200. He alleged that during the preceding year he earned a commission of $9,000 but that Campo Construction had paid him only $5,000, leaving a commission due of $4,000. The final allegation was that he paid a $60 registration fee in pursuance of company business for which he was never reimbursed.

Stembridge introduced evidence establishing the payment of the $60 fee and this was unrebutted. He also introduced evidence that he was familiar with the bookkeeping records of the Atlanta regional office and

they were prepared under his supervision. He testified that the profits of each succeeding construction job were added into the preceding ones so that at the end of the fiscal year there was an average profit and expense attributable to each job. His testimony was that during 1973-1974 the average overall profit for the 22 construction jobs was $11,100 and that his commission due was "about $20,000." This testimony supported the allegation that the actual commission due was $24,200.

There was also substantial testimony that personal expenses attributable to the Campo family (i.e., garage apartment, the upkeep of racing cars, yard man, mechanics, maids, etc.) were charged to various construction jobs. Stembridge testified that he had computed an average of $3,000 personal expenses per job attributable to these improper charges or a total of about $66,000. There was other evidence that the personal expenses figure as to one construction job was approximately $2,000. By adding these expenses to the general construction costs, Stembridge complained he lost substantial commissions.

Campo Construction in effect admitted that for 1972-1973 Stembridge had earned commissions but would only agree that approximately $2,000 remained unpaid.

In its cross examination of Stembridge, Campo Construction forced Stembridge into the admission that his initial demand (by letter following his discharge by Campo) was for the lesser figures of $112,000 profit for the 22 jobs or a total commission of $11,200; and that the total commissions due for 1972-1973 were $7,000 of which $5,000 had been paid, leaving a commission unpaid of $2,000. Campo Construction also offered evidence that the Atlanta region suffered a substantial loss during 1973-1974 rather than a profit.

The trial court found commissions due Stembridge for 1972-1973 in an amount of $2,000. It found net construction profits for 1973-1974 to be $112,000 with commissions due Stembridge of $11,200. It found an unreimbursed fee of $60 due. Finally, the court found that improper accounting entries amounting to $20,000 had improperly decreased commissions due Stembridge by

$2,000.

While the findings of the court generally coincide with the admissions made by Stembridge during his cross examination, these figures were the lower range of the amounts claimed by Stembridge to be due him. The upper range of the alleged damages was indicated in the amended pleadings and supported by testimony offered by Stembridge. Where the judgment of the trial court awards damages within the range of the conflicting testimony, this court will not reverse the judgment of the trial court on the ground the judgment was excessive. *Reserve Life Ins. Co. v. Ayers,* 107 Ga. App. 660 (3) (131 SE2d 122).

We are bound by and follow the rule that an appellate court when reviewing a judgment will not interfere with a finding by the trial court where there is any evidence to support it. We will not retry factual issues but limit our review to the correction of errors of law. *Kingston Development Co. v. Kenerly,* 132 Ga. App. 346, 348 (208 SE2d 118).

Concomitant with this principle is the directive that after judgment every presumption and inference favors it and the evidence must be construed to uphold rather than to destroy it. *Givens v. Gray,* 126 Ga. App. 309, 310 (190 SE2d 607).

Our review of this transcript satisfies us there is present the necessary evidence to satisfy the "any evidence rule." We therefore affirm.

*Judgment affirmed. Pannell, P. J., and McMurray, J., concur.*

SUBMITTED APRIL 7, 1976 — DECIDED MAY 7, 1976.

*Robert W. Cagle, Edward H. Flitton,* for appellant.
*G. T. Crichton, Walter P. McCurdy, Sr., Claude Hambrick,* for appellee.