66690. DEPARTMENT OF TRANSPORTATION v. LEWYN
et al.
66691. CARPETS & INTERIORS BY BETTY, INC. v.
DEPARTMENT OF TRANSPORTATION.

BIRDSONG, Judge.
Condemnation. Mrs. Esther Lewyn owned a small tract of land with a building thereon fronting on Chantilly Drive. The building was leased by Mrs. Lewyn to a Mrs. Betty Gano in the name and entity of Carpets & Interiors by Betty, Inc. for a ten-year term. Mrs. Lewyn had purchased the real estate for investment purposes and not for speculative real estate short term gain. After owning the property for several years (during which time she rented the property to a machine shop business) Mrs. Lewyn was offered a purchase price of $185,000 for the property. Because she was holding the property for long term investment, she declined the offer. At the expiration of the lease with the machine shop business, the building was no longer large enough for the machine shop, and the tenant vacated the premises. Mrs. Lewyn then leased the building to Mrs. Gano. In order to facilitate the building as a display location for a carpet and interior decorating business, Mrs. Gano expended considerable time and money cleaning, refurbishing and remodeling the building to provide both office-display and warehousing area for her carpet-decorating materials and supplies. Because of the time and money expended by Mrs. Gano, the landlady, Mrs. Lewyn, entered into a "sweetheart" lease with Mrs. Gano at a rate significantly below what could have been demanded in the open market. Considering the nature and volume of her business, the location required and furnished several (4) parking places in the front (off Chantilly Drive) and additional parking places in the rear of the building.

After Carpets & Interiors by Betty had been in the Chantilly Drive location for several years, the Department of Transportation (DOT) condemned a portion of the land fronting on Chantilly Drive. This was necessitated by the widening of I-85, which ran directly in front of Mrs. Lewyn's property parallel to Chantilly Drive. By widening I-85, Chantilly Drive had to be moved several feet to the east. By the taking in the front of the building, all but one of the four parking places were eliminated. I-85 was raised several feet above its pre-existing level and a protective barrier or wall was built on either side and in the middle of the expanded interstate highway. The result of this protective barrier was significantly to reduce or eliminate any visual exposure of the carpet-interior business to passing motorists, which prior to the widening of the interstate had been exposed to many thousands of motorists each day.

Following the loss of parking places and the greatly reduced exposure of the business to the public, Mrs. Gano experienced a substantial loss of business. Moreover, the loss of parking places caused the business premises to be non-conforming to county ordinances. Mrs. Gano thus was forced to move her location. After examining numerous locations along the I-85 corridor, she discovered a location a short distance further north and on the opposite side of I-85. In order to utilize the newly leased premises, Mrs. Gano was compelled substantially to modify the interior, incurring significant costs. She also had to buy and install a larger sign advertising her business because the business was located further from I-85 and the existing sign was not large enough. This move did not occur until almost a year after condemnation had occurred.

Mrs. Lewyn also experienced great difficulty in leasing the building after Mrs. Gano vacated because of the reduced exposure and loss of parking spaces. As a result, Mrs. Lewyn ultimately sold the property for $155,000, at what she contended was a price significantly less than what the property would have commanded prior to condemnation, i.e., $222,000.

After a four-day trial by jury, verdicts were returned in favor of Lewyn and Gano's business in amounts of $50,000 and $25,000 respectively. DOT filed the main appeal (Case No. 66690) enumerating twelve alleged errors. Mrs. Gano, as Carpets & Interiors by Betty, Inc., filed a cross appeal (Case No. 66691) asserting four alleged errors. Inasmuch as both cases arise out of the same transaction and are based upon the one record and transcript, we will consolidate the appeals and dispose of both in this one opinion. *Held:*

### Case No. 66690

1. In its first three enumerations of error, DOT argues that the

trial court erred in allowing Mrs. Lewyn to offer evidence of an unaccepted, informal offer for the purchase of her property for $185,000 and then by using that figure as fair market value as of the time of the offer, extend value by appreciation to a figure of $222,000 as of the time of the taking. See *Merritt v. Dept. of Transp.,* 147 Ga. App. 316, 318 (248 SE2d 689), reversed on other grounds, 243 Ga. 52 (252 SE2d 508); *Sutton v. State Hwy. Dept.,* 103 Ga. App. 29, 30 (4) (118 SE2d 285).

While it is certainly an accurate statement of law that an unaccepted offer to buy, sell or lease property, standing alone, is not in and of itself any evidence of true market value, such an offer is competent evidence as one factor utilized by an expert rendering an opinion as to true market value. See *Sutton v. State Hwy. Dept.,* supra. In this case, Mrs. Lewyn testified that she had been involved in the purchase and sale of real estate for a number of years and had compared prices of many pieces of property along the I-85 corridor before buying the property in litigation. It clearly was her opinion based upon her experience that the offer of $185,000 at the time of the offer was a fair price on the then current market. Thus, we are not confronted with an isolated, unsupported offer to purchase the land, parroted by an inexperienced seller as the true market value. Moreover, Mrs. Lewyn testified as to her knowledge of escalating accretions in value of real estate along the I-85 corridor and as to the increased square foot value of property in that area generally. It was her opinion that based upon normal inflationary processes and increasing property values, her property had increased at a percentage rate sufficient to make the true market value of her property as of the time of the taking of a value of $222,000. Though she applied the percentage increase to the $185,000 offer to purchase in order to reach the $222,000 figure, Mrs. Lewyn had already testified that in her opinion, with reasons in support thereof, the property indeed had that market value. Thus we conclude that the complaint made by DOT to the admission of this opinion evidence is without merit and falls without the ambit of the cases cited by it precluding the use of an unaccepted offer to purchase as the basis for establishing market value. See *State Hwy. Dept. v. Whiddon,* 109 Ga. App. 744 (137 SE2d 377).

2. In enumerations 4 and 5, DOT contends that the court erred in allowing Mrs. Gano to testify as to her "renovation" expenses at the new location totaling over $15,000. DOT contends these renovations were "replacement" expenses (i.e., capital expenditures) which had to be, but were not, depreciated. See *Housing Auth. of Atlanta v. Goolsby,* 136 Ga. App. 156 (3) (220 SE2d 466). DOT also contends that to allow the lessee to recover "renovation" expenses at

the new site would allow double compensation inasmuch as the lessee was recovering the value of her loss resulting from her displacement from the Chantilly Drive location. See *Peek v. Dept. of Transp.,* 139 Ga. App. 780 (229 SE2d 554).

Our disagreement with this argument stems from our conclusion that the expenses incurred by Mrs. Gano at the new location were not renovation expenses but were correctly attributable as "relocation" costs. Mrs. Gano testified that the nature of her business required the use of a fork lift truck to move heavy carpets. She was required to have somewhat unique floor arrangements to accommodate her display area, her office area and her warehousing area. She looked at many new locations and the one ultimately selected was not useful to her in its then condition but required the modifications to make the building appropriate as her new business location. Similarly, she was required to purchase a new, larger sign advertising her business because the old sign was not large enough considering the increased distance of her business location from the thoroughfare. We consider the evidence offered by Mrs. Gano properly may be considered as relocation costs, equally compensable as her costs of moving. See *DeKalb County v. Fulton Nat. Bank,* 156 Ga. App. 253 (1) (274 SE2d 649); *Bowers v. Fulton County,* 221 Ga. 731, 740 (3) (146 SE2d 884). Relocation costs are recoverable as a part of just and adequate compensation. *Bowers,* supra.

3. In enumerations 6 and 7, DOT contends the trial court erred in allowing Mrs. Gano to offer as evidence the lease at her new location and using the difference between rent under the new lease and under the old lease as an indication of the value of her leasehold interest in the Chantilly Drive property. DOT particularly urges that this was error in that the cost differential between the two leases was not reduced to its present value. See *Dept. of Transp. v. McLaughlin,* 163 Ga. App. 1, 5-6 (292 SE2d 435).

In seeking to establish the value of the leasehold interest in the Chantilly Drive property, Mrs. Gano sought to show the uniqueness of that building and its location to the operation of her business, the "sweetheart" rental agreement made with the owner, Mrs. Lewyn, the "total eviction" resulting from the loss of adequate parking and public exposure requiring her to move to a new location in order to recapture the utility of a suitable building with adequate exposure but at a higher rental, and the difference in business income at the two locations. As we view the testimony in its proper perspective, the evidence of the new lease showing its terms (cost and length) was but one aspect of Mrs. Gano's effort to establish the value of the condemned leasehold. As such the evidence certainly had relevance

to the issue of leasehold value. Any evidence is relevant which logically tends to prove or disprove a material fact which is at issue in a case, and every act or circumstance serving to elucidate or throw light upon that material issue is relevant and admissible. See *Allen v. State,* 137 Ga. App. 755, 756 (224 SE2d 834). See also *Lovejoy v. Tidwell,* 212 Ga. 750, 751 (95 SE2d 784). As indicated, however, DOT argues that the rental difference for the unexpired term of the original lease was used to establish a direct link to the value of the condemned leasehold. Because this was not reduced to present value, DOT urges error in the admission of the new lease, citing *McLaughlin,* supra.

However, *McLaughlin,* supra, dealt with an owner's loss of rental income from the unexpired but cancelled life of the lease. This together with the reversionary interest is a compensable matter, but each must be reduced to a present value, i.e., value as of the time of the condemnation. Mrs. Gano had no reversionary interest in the estate and would suffer no loss of rental income that would require the difference between the old and new rental costs to be reduced to a present value. Thus we find this case to be inapplicable. However, the record demonstrates that Mrs. Gano's expert did reduce her leasehold interest to its present value. See Division 4 below. Moreover, the lease as to the new business site was admissible as reaching the credibility of Mrs. Gano's evidence that the new property was more or less comparable with the old. *White v. Ga. Power Co.,* 237 Ga. 341 (3), 345-346 (227 SE2d 385).

4. DOT urges the trial court erred in refusing to strike the testimony of one of Mrs. Gano's experts who testified that the leasehold value in the Chantilly property was $13,558, because the expert failed to consider the diminution in market value during the unexpired term of the lease, less rents paid by the lessee. We find this enumeration without merit. Our examination of the transcript convinces us that the expert properly determined the economic value (i.e., rent reasonably chargeable to the market rate) for the remainder of the lease, minus the reduced "sweetheart" rents due under the lease, and reducing this difference to its present value. This is in accordance with the legal requirements rendering such evidence admissible. See *Peek v. Dept. of Transp.,* supra; *Garber v. Housing Auth. of Atlanta,* 123 Ga. App. 29 (1) (179 SE2d 300).

5. We find no error in the exclusion of the testimony of one of DOT's experts who sought to show that he had changed his opinion as to value existing at the time of the taking to one of a greater value. This testimony was offered at the time of trial to reduce or eliminate any consequential damage to the Chantilly Drive property because of

changed circumstances in the location and probable upgrading of other property owners still at the location. Changed circumstances or upgrading by adjacent property owners did not reflect the circumstances at the time of taking. We agree with the exercise of discretion by the trial court in excluding such testimony as bordering on the irrelevant or immaterial. See *Dyke v. State,* 232 Ga. 817, 825 (209 SE2d 166).

6. DOT contends that the trial court grossly prejudiced its case when the court allowed opposing counsel on eight occasions to interrupt the flow of the closing argument of the attorney for the condemnor. Without examining each of the eight occurrences in detail, suffice it to say that the trial court could not curtail counsel's right to interpose objections to inappropriate (or what that counsel might conclude to be inappropriate) argument. Certainly the interrupting counsel risks waiving the prejudice contained in improper argument if he fails to object. See *McLemore v. Andrika,* 121 Ga. App. 527, 529 (2) (174 SE2d 371).

Our examination of the transcript reflects vigorous arguments advanced by a counsel zealously pursuing the rights of his client. We do not fault counsel for so doing. However, neither do we fault opposing counsel or the trial court in concluding the single-minded insistence upon one point of view can be interpreted as either misstating or ignoring other evidence indicating a contrary position. The trial court on several occasions reminded the jury that it (the jury) would have to recall the evidence as presented. On another occasion (but after having taken the unusual step of excusing the jury during argument), the trial court admonished counsel for the condemnor to argue the issues in light of the evidence, precluding counsel from arguing as if no contradictory position was presented. We concede that the forensic art in a jury trial is a valuable tool but the extent of argument is a matter that falls within the sound discretion of the trial court. *Hightower v. State,* 225 Ga. 681 (3) (171 SE2d 148). Certainly overly zealous argument may well invite objections by opposing counsel. In ultimate effect, counsel for DOT was not precluded from presenting complete and effective argument and thus we do not find the presence of that gross abuse of discretion that would necessitate a new trial to insure due process or ultimate fairness. Neither egregious error nor prejudice has been shown and thus no grounds for reversal appear. See *Dill v. State,* 222 Ga. 793 (1) (152 SE2d 741).

7. We have examined DOT's last two enumerations of error pertaining to evidence of temporary inconvenience and the obligation of the landlady (Mrs. Lewyn) to pay real estate commissions for the installments on the remainder of the term of the

cancelled lease. The first was expressly removed from the jury as evidence of damages and was admitted for the limited purpose of showing why a move to a new location became urgent. The second was relevant to show an obligation under the lease, not that the obligation was paid. We find these two enumerations to be wholly without merit.

*Case No. 66691*

In its cross appeal, Carpets & Interiors by Betty, Inc., raises four additional enumerations of error.

8. Enumeration 1 is concerned with the actions of the trial court in excluding testimony by Mrs. Gano through her expert that she had suffered considerable loss of profits because of the condemnation and relocation necessitated thereby. In substance, this evidence (initially admitted by the trial court) showed that for the two years preceding the condemnation, Mrs. Gano had experienced net profits that showed a consistent 16 percent per month net increase in the second year over the first. The expert then sought to show that in the months following the condemnation, the business either earned an amount less than one mandated by a 16 percent increase in profits or in an amount less than the amount earned in the corresponding month in the preceding year. The trial court had admitted the evidence initially, apparently to allow Mrs. Gano to show loss of business by showing that actual income for the months following condemnation was less than income preceding condemnation. Through its accountant, cross appellant sought to show that the loss of profits was the difference between each month's income before and after condemnation as augmented by a 16 percent net increase in profits. However, the expert on cross-examination conceded that the reduction in profits could have been affected by the drop in new construction, escalating costs or other factors as well as the impact of condemnation.

In the face of such testimony, we conclude without hesitancy that there was such a degree of impreciseness, speculation and remoteness as to the loss of the profits sought by Mrs. Gano as to render such testimony wholly improper and inadequate to furnish a jury an evidentiary basis for ascertainable damages. *Dept. of Transp. v. Dixie Hwy. Bottle Shop,* 245 Ga. 314 (265 SE2d 10); *Dept. of Transp. v. Kendricks,* 148 Ga. App. 242, 246 (250 SE2d 854). The trial court did not err in removing this issue from the jury nor in refusing to give a charge on the subject.

9. In its second enumeration, Betty's, Inc. contends an error in the charge of the court as to the measure of damages relative to the leasehold interest. While the ordinary damage to the landlord is the

diminution in the market value of the property less rents paid by the lessee, Mrs. Gano argues from the viewpoint of a lessee who enjoyed an advantageous lease agreement. She thus argues that she was entitled to a difference between the true market rental and the actual rental she was paying for each month for the unexpired term.

The trial court charged in the standard measure of damages in a leasehold interest, i.e., the diminished value of the property less rents paid, as required by cases such as *Peek v. Dept. of Transp.,* supra and *McGhee v. Floyd County,* 95 Ga. App. 221 (97 SE2d 529). Though cross appellant entered an objection to this charge, no charge in writing was submitted to the trial court requesting a more specifically tailored charge.

In the absence of a timely written request, a charge given in legally correct language as required by statute or legal precedent, will constitute a legally sufficient charge. *Bass v. State,* 237 Ga. 710, 711 (229 SE2d 448). If Mrs. Gano desired a more specific charge, it should have been made the subject of an appropriate written request. *Thomas v. State,* 99 Ga. App. 25 (5) (107 SE2d 687). In the absence of such a request for elaboration of a more specific statement, a general and correct statement of law will not give rise to error requiring a new trial. See *Anglin v. State,* 244 Ga. 1 (5) (257 SE2d 513); *McFarland v. State,* 109 Ga. App. 688 (1) (137 SE2d 308).

10. In her third enumeration, Mrs. Gano (Betty's, Inc.) complains the trial court erred in refusing to allow her to testify as to the rentals demanded by the large number of sites she examined as a replacement for her business location. While Mrs. Gano did testify she looked at approximately twenty places, she also admitted that the majority of them were either too large, had too much office space or too much warehouse space, the rent was exhorbitant or other stated reasons rendered the property unobtainable or non-useful. In substance then, Mrs. Gano established that most of the places she looked at were not comparable for one reason or another with the premises she was being forced to vacate. The trial court correctly sustained DOT's objection to the admissibility of the rental of such properties, for no proper foundation had been laid to demonstrate the similarity or comparability of these other properties. *Dept. of Transp. v. El Carlo Motel,* 140 Ga. App. 779 (1) (232 SE2d 126); *Housing Auth. of Atlanta v. Goolsby,* supra, Division 2. We discern no error in the action of the trial court.

11. In her final enumeration, Mrs. Gano argues the trial court erred in excluding the cost of a replacement sign. We can find no error in this regard. Mrs. Gano was allowed to testify at length about her new sign, including its costs, its location, its size and other particulars concerning the sign, including the fact she had only paid

approximately a third of its cost. We find this enumeration not to be supported by the evidence of record.

12. In this case, DOT had paid $33,000 into the registry of the court prior to the trial of this case. The combined verdicts of $50,000 in behalf of Mrs. Lewyn and $25,000 in behalf of Betty's Inc., required an additional payment of $42,000. The verdict, when examined within the light of the evidence of consequential damages to the fee and leasehold interests, is well within the range of the testimony presented to the jury. Thus this court will not reverse the enlightened verdict of the jury nor the considered judgment of the trial court in the absence of harmful trial error. *Campo Const. v. Stembridge,* 138 Ga. App. 555, 557 (226 SE2d 797).

*Judgment affirmed. Shulman, C. J., and McMurray, P. J., concur.*

DECIDED SEPTEMBER 15, 1983 —
REHEARING DENIED OCTOBER 4, 1983 — 

*Charles C. Pritchard, Abraham A. Sharony,* for appellant (case no. 66690).
*Burt DeRieux,* for appellee.
*E. T. Hendon, Jr.,* for appellant (case no. 66691).
*Charles C. Pritchard, Abraham A. Sharony* for appellee.