## 77220. ANDERSON v. CHATHAM.
### (379 SE2d 793)

BEASLEY, Judge.

Defendant Anderson appeals the judgment entered on an adverse jury verdict and the denial of his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial in this suit stemming from Chatham's termination of employment.

The litigation has a lengthy procedural history. In September 1984, Anderson terminated Chatham. The following month, Chatham made a written demand for certain bonuses, vacation pay, and pension and profit sharing funds which she claimed she was due. The demand was not successful and Chatham sued. Anderson acknowledged service of Chatham's complaint on January 30, 1985 and Chatham filed her complaint along with the acknowledgment in the State Court of Fulton County on February 11.

On February 28, Anderson filed a motion to dismiss the suit alleging that he had never in an individual capacity employed Chatham and therefore his acknowledgment of service in his individual capacity was insufficient to confer jurisdiction over the proper party defendant in the case. Anderson supported the motion with his own supplemented affidavit stating that he had not personally employed Chatham and that her employment had been successively with Industrial Properties Group, Anderson/Buckner Company, and Anderson Properties, Inc. Chatham moved for leave to amend the complaint to

add the businesses as defendants.

The motion to dismiss was denied and the motion to add the parties was granted. Chatham filed an amended complaint adding Anderson Properties, Inc., and Gene Anderson Company as defendants. On May 31, prior to the businesses' acknowledgment of service, they filed suit against Chatham in the Superior Court of Gwinnett County alleging that she negligently failed to properly and reasonably perform her employment duties, made fraudulent misrepresentations about her prior job experience and ability to handle the position for which she was hired, and possessed and used certain personalty without authority. They requested damages and temporary and permanent injunctive relief.

On June 10, Chatham requested that the Gwinnett suit be dismissed without prejudice and that the corporate defendants' claims be filed as counterclaims in her Fulton County suit where they had already been added as defendants. The corporations refused and Chatham answered the complaint and counterclaimed. The corporations maintained that their cause of action against Chatham was a separate matter notwithstanding their addition to the Fulton suit. They offered to consent to a voluntary dismissal without prejudice of those claims to permit them to be raised as compulsory counterclaims in the Gwinnett Superior Court so that the litigation of the two separate causes of action would proceed. The corporations also maintained that a superior court was necessary to adjudicate their equitable claims. After Chatham was served in Gwinnett, Anderson's counsel accepted service of the two amended complaints for the corporations in the State Court of Fulton County action and the corporations subsequently answered that suit.

The corporations then moved to dismiss for lack of jurisdiction pursuant to OCGA § 9-11-12 (b) on the grounds that any claim that Chatham may have against them had been asserted as compulsory counterclaims in the Gwinnett suit. Gene Anderson Company, Inc., also asserted that Chatham had failed to obtain a court order permitting the amendment to her complaint to state a claim against it in violation of OCGA § 9-11-21. Those motions were denied by the Fulton court on September 13.

On September 23, Anderson and his corporations moved to transfer the Fulton State Court case to the Superior Court of Gwinnett County on the grounds that the answers and counterclaims of the corporate defendants raised equitable defenses and claims for equitable relief over which the state court lacked subject matter jurisdiction. On September 27, Chatham moved for summary judgment as to the corporations' claim for equitable relief in the Gwinnett County action.

Rather than transfer the Fulton State Court action to Gwinnett, the Fulton State Court transferred the action to the Fulton Superior

Court, on November 1. The two corporations then requested that the Gwinnett County case be transferred to the Superior Court of Fulton County for consolidation with the transferred Fulton State Court case.

On May 12, 1986, the Fulton Superior Court granted Chatham's refiled motion for summary judgment on the equitable claims against her and also directed that the style of the case reflect that Chatham was the plaintiff and that Anderson individually along with Anderson Properties, Inc., and Gene Anderson Company, Inc. were the defendants.

The case was tried in the Superior Court of Fulton County and the jury awarded Chatham $545.85 vacation pay, $2,043.33 from the pension and profit sharing plan, $7,714.92 in bonuses, $13,500 attorney fees, $2,000 for intentional infliction of emotional harm, and $5,000 punitive damages. A special verdict form was submitted to the jury concerning piercing the corporate veil of Anderson's two corporations. The jury returned its verdict piercing both corporations and holding Anderson personally liable for all amounts. Judgment was entered for Chatham and against Anderson personally for $30,804.10 plus interest at 12 percent and costs.

1. Appellant contends that the trial court erred by entering judgment against him personally in the absence of jurisdiction over his person. He argues that the effect of the trial court's order of May 12, 1986 was not only to realign the plaintiffs and defendants but also to add him personally as an additional party defendant to that lawsuit, and although the court had the discretion to enter an order on its own initiative to add him as an additional party defendant, this did not dispense with the requirement of serving him with process so as to subject him to the personal jurisdiction of the court.

Anderson personally acknowledged service of the original suit filed by Chatham in the Fulton State Court. The consolidation and transfer of the entire litigation to the Superior Court of Fulton County was accomplished through Anderson's own actions and those of his corporations.

Even assuming a valid ground for complaint of lack of personal service, such complaint "concern[s] [a] nonamendable [defect] which appear[s], if at all, on the face of the record or pleadings, and thus would be the subject matter of a motion to set aside under OCGA § 9-11-60 (d). Appeals from orders denying such motions to set aside must follow the discretionary appeal procedures pursuant to OCGA § 5-6-35 (a) (8)." *State Farm Mut. Auto. Ins. Co. v. Yancey*, 188 Ga. App. 8, 9 (1) (A) (371 SE2d 883) (1988). Anderson failed to do so, and the appeal with regard to this issue must be dismissed.

2. Appellant contends that the trial court erred by entering judgment against him personally in the absence of evidence to support the

verdict, with respect to piercing the corporate veil.

A substantial portion of the evidence permitting the jury to pierce the corporate veil came from Anderson himself. When questioned about an individual financial statement which listed as well certain corporate assets including pension and profit sharing plan money, Anderson testified that he treated all of the assets as his own because he owned all of the stock in both corporations. He also testified that he would give out such a financial statement to certain bankers and investors with whom he was going to have business dealings. His testimony was replete with other examples of his intermingling of business and personal actions and transactions, including admission that he paid certain personal expenditures from corporate accounts because "it's just a one man operation."

In addition, Chatham, who at one time kept the books, testified that Anderson had used a number of different corporations to transact business, at one time operating under twelve or thirteen corporations, and that the corporations were used strictly as "wash throughs." There were no assets in the corporation at the end of the month, so Chatham looked to Anderson individually. She was paid by different corporations, whatever account Anderson was using at the time. Her agreement was that she worked for Anderson personally.

The evidence of Anderson's disregard of the separateness of the legal business entities by a commingling and confusion of properties, records, control, etc. was sufficient to permit the jury to pierce the corporate veils. *Bone Constr. Co. v. Lewis*, 148 Ga. App. 61, 63 (4) (250 SE2d 851) (1978).

Anderson also argues that he cannot be personally liable for the corporate obligations because the jury held that the corporations were not responsible for those obligations.

The special verdict form established direct liability on the part of Anderson. It provided for, and the jury expressly found, that Anderson acted in such a manner that he disregarded the separateness of the corporate entities so that he was liable for any judgment rendered in the case against the corporations. Thus, the verdict did not exonerate the corporations but rather established Anderson's individual liability whether Anderson stood alone or behind the corporations.

Anderson also urges that he is not personally liable for pension and profit sharing benefits due Chatham because the plans were not made parties to the lawsuit, a proper representative was not made a party to the action, and because there was no theory whatsoever presented at trial under which he could be held personally liable for Chatham's ERISA benefits.

Anderson was the trustee for the plans. Chatham was permitted to bring her action under ERISA in a state court by maintaining her action against a fiduciary of the plans. ERISA, Sec. 502, 29 USC §

1132. As already noted, Anderson personally acknowledged service of the original suit, and any claim of lack of proper service as a party to the final litigation is not properly made in this direct appeal. See Division 1, supra.

Further, there was ample evidence to pierce any corporate veil provided by the plans, and because of this, to hold Anderson personally liable for Chatham's pension and profit sharing benefits. See Division 1, supra.

In addition, Anderson's trial counsel implored the jury in closing argument to "bring back a judgment for the plaintiff for the only thing she's entitled to, the amount of the pension and profit sharing plan which is held in trust for her in the amount that the accountant for the Plan has said is the proper amount. I believe the [$1,700] and few dollars. And nothing else. $1,739. Period. Nothing else. That's what she's entitled to. And that's what Mr. Anderson on the stand said absolutely, she's entitled to get that." Anderson may not now complain about what his own conduct helped bring about. See *Price v. Hitchcock*, 174 Ga. App. 606, 607 (2) (330 SE2d 807) (1985).

3. Appellant contends that the trial court erred in admitting certain documents which Chatham used to support her claims for bonuses in that the documents contained hearsay for which no proper foundation or exception was established.

First, Chatham's testimony was not based entirely on the documents but on her personal knowledge of Anderson's business operations while she was bookkeeper. Second, Anderson's specific complaints point out no reversible error.

Exhibit 5 was a real estate commission schedule. Chatham testified that it was the general course of business to prepare such after a real estate transaction closed, that as bookkeeper she in fact prepared the schedule, that she had personal knowledge of the numbers in the document, and that she used the closing statements in the office at that time to prepare it. There was evidence that the document was prepared during Chatham's employment and not afterwards in preparation for trial. The document was admissible as a business record. OCGA § 24-3-14; see *Suarez v. Suarez*, 257 Ga. 102, 103 (2) (355 SE2d 649) (1987).

Exhibit 6 was a memorandum from Anderson regarding a contemplated business transaction from which Chatham claimed she was due a bonus. Chatham typed the document during her employment as bookkeeper and had personal knowledge about the transaction. Even if the foundation for the document as a business record was weak, appellant has not shown how he was harmed, especially in light of Chatham's personal knowledge about the business deal. Without harm, there is no reversible error. *Estate of Sam Farkas v. Dougherty County School System*, 178 Ga. App. 135 (342 SE2d 501) (1986).

Exhibit 7 was copies of the cash receipts journal for Anderson Properties for a four-month period. Chatham testified that she prepared three months of them as part of her duties as bookkeeper and assisted in the preparation of the fourth. They were admissible under OCGA § 24-3-14.

Exhibits 8 and 9 were commission split documents. A proper foundation for these documents to be admitted as business records was not laid. However, Chatham's testimony regarding the information in these documents came from her personal knowledge. Appellant has not demonstrated how he was harmed by the jury's consideration of them.

4. Appellant contends that the court erred by entering judgment for a bonus in the absence of evidence to support the amount awarded, that it was based solely on inadmissible hearsay, that Chatham failed to establish the expenses to be reimbursed in connection with the gross commissions upon which she claimed a bonus, and that the judgment for a bonus was based upon improper conjecture and guessing.

The evidence concerning the amount of bonus due was not based solely on inadmissible hearsay. Division 3, supra.

Appellant's claim that Chatham failed to establish the expenses to be reimbursed in connection with the gross commissions upon which she claimed a bonus is not relevant to the recovery of the bonus, because the evidence was that Chatham was to get a percentage of gross commission, not gross commission less reimbursed expenses. Anderson's original handwritten proposal to Chatham states there would be a bonus of 1 percent of gross commission earned up to $1,000,000; thereafter, it would be ½ percent of gross commission. Chatham's memorandum in response restates the agreement as 1 percent of all gross commissions, management fees and consulting fees. The second sentence in the response memorandum makes clear that funds received by Anderson which were reimbursement of expenses and outside investment income were not to be treated as gross receipts in calculating gross commissions. Chatham was paid two bonuses under the agreement. Both were based on gross commissions.

The bonus was not based upon improper conjecture and guessing. Regarding the real estate transaction underlying the bonus, Chatham testified that her 1 percent bonus would be $1,804.58. She further contended she would be owed that entire amount even though a portion was to be received in the future because Anderson drafted the agreement, and that there was nothing said or in the agreement that allowed Anderson to defer his commissions and therefore defer her bonus. She also testified that it would be fair to discount the figure to present value and that a fair discounted amount would be $1,600. See *Moultrie Farm Center v. Sparkman*, 171 Ga. App. 736, 738 (3) (320

SE2d 863) (1984). Although expert testimony would not be required to establish the value of the bonus, OCGA § 24-9-65; see *Maddox v. State*, 157 Ga. App. 696, 697 (278 SE2d 480) (1981), Chatham was not without such expertise. She had functioned as a bookkeeper and by Anderson's own testimony was "a very intelligent person and extremely competent."

Chatham was not required to prove her damages in exact figures. *National Refrigerator & Co. v. Parmalee*, 9 Ga. App. 725, 726 (1) (72 SE 191) (1911). The jury's determination in regard to the bonus, see OCGA § 51-12-12, was within the range of testimony and evidence. See *Hubacher v. Volkswagen Central*, 164 Ga. App. 791, 795 (4) (298 SE2d 533) (1982).

5. Appellant contends the court erred by entering judgment for vacation pay in the absence of evidence to establish the specific terms regarding accrual procedures for vacation pay.

Chatham testified that when she began work in December 1980, the vacation pay was established and she would receive two weeks pay after a year. She took one week of vacation in 1984 and requested her additional week from Anderson for the first week of October. Anderson approved the vacation, but Chatham was terminated in September. She testified that she was entitled to $461.54.

This enumeration is without merit.

6. Appellant contends that the trial court erred by entering judgment for pension and profit sharing benefits in the absence of jurisdiction over the plans. For the reasons discussed in Division 2, this enumeration is without merit.

7. Appellant also attacks the judgment for pension and profit sharing benefits on the absence of evidence to support the amount awarded. He argues that in any benefits paid pursuant to the plans, the plans' assets had to be valued at fair market value as of each allocation date, i.e., the last day of each plan year; that if an employee is terminated the termination date was the applicable allocation date; that Chatham was terminated on September 27, 1984, and that the valuation of assets in the plans used to calculate the benefits claimed by Chatham was done in May 1983 and again in December 1983, so that the relied upon valuations were not performed in accordance with the plans' provisions.

The flaw in this is that the evidence showed that effective June 1, 1983, Chatham notified Anderson that she elected not to participate in the pension and profit sharing plan. This was the correct time frame upon which to base calculation of amounts due her. Moreover, when Chatham was terminated, Anderson's accountant and drafter of the plan directed Anderson to write Chatham a check for $1,739 as Chatham's vested interest.

This enumeration is without merit.

8. Appellant contends that the court erred by entering judgment for intentional infliction of emotional distress in the absence of evidence. He maintains that Chatham failed to establish a cause of action for this and failed to establish any damages that were the proximate result of any such tort.

Chatham worked for Anderson for four years prior to her termination. She thought Anderson could be very emotional, very vindictive, and very cruel when angry. During the end of her employment, Chatham felt that Anderson was very inconsiderate, very rude, very temperamental, and very emotional.

Chatham claimed that Anderson threatened her and intentionally and wilfully inflicted emotional harm upon her in an encounter at her termination. He told her to "just get your stuff and leave . . . don't try to sue me . . . if you have any thoughts about trying to sue me, . . . you're going to be playing with the big boys and you're going to be sorry . . . you either take what I'm offering you and give up the rights to the bonuses and everything else, or you leave . . . you better not look to me for any kind of reference or you'll be sorry."

Chatham had an ulcer at the time. She was very upset by the encounter, did not sleep well for a few nights, vomited, and took medication for the ulcer and for nerves. Chatham was aware of Anderson's considerable business holdings and was very apprehensive when she went back out into the job market.

"It is a well-established general rule in this state that in order to sustain a cause of action for the tort of intentional infliction of emotional distress, the defendant's actions must have been so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff. [Cits.] However, our courts have also recognized that 'there is authority to sanction a recovery in tort where the defendant has wilfully and wantonly caused emotional upset to the plaintiff through the use of abusive or obscene language.' [Cits.] . . . [T]his cause of action grounded on wilful or wanton conduct does not give rise to any new type of tort heretofore unrecognized, rather it is but a practical application of the well-reasoned tort principle, . . . that 'reckless and wanton disregard of consequences may evince an intention to inflict injury.' Thus, as in the case of severe mental distress caused by intentional infliction of injury, " ' "a reckless disregard of the rights of others, equivalent to an intentional tort [committed] by the defendant" ' " will give rise to a cause of action to the injured party for the mental pain and anguish, that is, the mental distress, suffered therefrom . . . . to sustain a cause of action for the emotional distress tort of wilfully and wantonly causing emotional distress through the use of abusive or obscene language, the defendant's conduct must have been so abusive or obscene as naturally to humiliate, embarass, frighten, or extremely outrage the plaintiff. [Cit.] . . .

"In order to warrant recovery under either theory, the conduct also must be of such serious import as to *naturally* give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress. Otherwise, the conduct will not rise to the requisite level of outrageousness and egregiousness. [Cits.]" *Moses v. Prudential Ins. Co. of America,* 187 Ga. App. 222, 225 (369 SE2d 541) (1988).

While the objected-to language might not, taken in isolation, rise to a level of conduct actionable under the law for emotional distress, viewing the encounter with Anderson in the totality of the circumstances does not show a failure of the cause of action as a matter of law. The last encounter came after a described pattern of abusive behavior after the two had had a lengthy working relationship. Moreover, "the existence of a special relationship in which one person has control over another, as in the employer-employee relationship, may produce a character of outrageousness that otherwise might not exist. [Cit.] . . .

"The severity of the emotional distress allegedly produced by the conduct is also a factor in determining liability for this tort. [Cit.]" *Bridges v. Winn-Dixie Atlanta,* 176 Ga. App. 227, 230 (335 SE2d 445) (1985) discussing Comment f, § 46 (1) of the Restatement (2d) of Torts, Ch. 2, Emotional Distress (1965).

Such a threatening encounter within the context of the special relationship of employer-employee would naturally give rise to intense feelings so as to cause severe emotional distress. See *Greer v. Medders,* 176 Ga. App. 408 (336 SE2d 328) (1985), which considers the tort in the context of statements made by a physician to a postoperative patient and his wife. In addition, contrary to appellant's assertion that because Chatham stated she had an existing ulcer at the time of the incident she suffered no direct damages as a result of the conversation, Chatham experienced other significant physical manifestations directly resulting from the incident.

The trial court did not err in permitting the jury to consider Chatham's damages for emotional distress and in entering judgment on the jury's determination that Anderson's conduct constituted the tort.

9. Appellant contends that the court erred by charging the jury on intentional infliction of emotional distress because of lack of evidence and failure to instruct on the elements.

Chatham did not fail as a matter of law to submit evidence of the tort. See Division 8, supra.

There is no indication that Anderson initially requested a more detailed or elaborate instruction on the elements of the tort; he objected to any instruction in this regard whatsoever. See *Department of Transp. v. Lewyn,* 168 Ga. App. 283, 290 (9) (308 SE2d 684) (1983).

Following the court's charge, his only objection to this instruction was that there had to be some "actual damage before you can recover for emotional damage." "It is well settled that on appeal the ground of the objection stated below 'cannot be enlarged . . . to include grounds not urged before the trial court.' [Cits.]" *Gurin v. Gen. Motors Corp.*, 171 Ga. App. 159, 160 (1) (318 SE2d 830) (1984).

If by "actual damage" appellant means physical injury or impact, that is not required when the conduct at issue is wilful or intentional. See *Tuggle v. Wilson*, 248 Ga. 335, 337 (2) (282 SE2d 110) (1981).

10. Appellant contends the court erred by entering judgment for punitive damages in the absence of evidence. He maintains that neither the verdict nor the judgment specified whether this award was based on the distress claim or on aggravating circumstances in breach of contract, and that there was no evidence to support the tort.

The special verdict form made clear that the jury could find that Chatham was entitled to an award of exemplary or punitive damages if it found that plaintiff was entitled to recover against Anderson in tort for any intentional infliction of emotional harm. There was no question upon what basis the jury awarded punitive damages. This, coupled with the evidence of the tort, see Division 8, supports the judgment for punitive damages.

11. Appellant contends that the trial court erred by entering judgment for attorney fees incurred or earned in connection with lawsuits other than the one before the trial court, of which there was evidence in the nature of time records.

The original complaint in Fulton State Court was part and parcel of the entire litigation on trial, justifying attorney fees incurred during that stage as no less recoverable than those incurred at other times in the dispute resolution.

12. Appellant contends that the court erred by entering judgment for attorney fees because there existed a bona fide controversy. In considering the propriety of an award of attorney fees under OCGA § 13-6-11, the judgment should be affirmed if there is any evidence to support it unless it can be said as a matter of law that there was a reasonable defense. *Ken-Mar Constr. Co. v. Bowen*, 245 Ga. 676 (266 SE2d 796) (1980).

We cannot say as a matter of law that Anderson had a reasonable defense. Moreover, there was evidence of Anderson's bad faith in entering into and performing under the agreement with Chatham.

13. For the same reasons, appellant's contention that the court erred in charging the jury on attorney fees because there was a bona fide controversy and a lack of evidence with respect to any degree of bad faith or stubborn litigiousness, fails.

14. Appellant enumerates as error the exclusion of memoranda between Chatham and himself. He urges these documents in aid of

his defense on the issues of the existence of a bona fide controversy regarding Chatham's job performance and whether the corporate veils should be pierced. He claims the memoranda showed his dissatisfaction with Chatham's job performance, corroborated other testimony regarding Chatham's poor attitude toward her job, and showed that although it was customary practice for them to communicate with each other informally, Chatham clearly understood that the communications from him were in his capacity as an officer of the two corporations rather than in his personal capacity.

The documents were not relevant to the issues on trial. It was undisputed that Chatham was an employee at will and that wrongful termination was not an issue. The benefits Chatham claimed were not dependent per se on the quality of work performance. Furthermore, the subject documents did not reflect on Chatham's job performance in such a manner as to bear on Anderson's claims against Chatham. Nor do they demonstrate a separateness of Anderson and his corporations so as to weigh against a piercing of the corporate veils.

In any event, Anderson testified that Chatham's job performance was positive. He also had full opportunity to testify about the functioning of his businesses. See Division 2, supra. Therefore, he could not have been harmed by the exclusion of the documents. See *Hall v. Rome Auto. Co.*, 181 Ga. App. 621, 623 (2) (d) (353 SE2d 542) (1987).

15. Appellant contends that the court erred by entering judgment for post judgment interest on a verdict amount that included both principal and prejudgment interests and that this court should require renouncement of all post judgment interest or should set aside the judgment as error.

The prejudgment interest can readily be calculated from the record. The jury awarded Chatham interest on the sums she requested. Of the total $30,804.10 awarded, the maximum amount of included prejudgment interest would be $1,537.67. Any irregularity in this regard in the judgment shall be corrected by amendment by the trial court so that the judgment will reflect that only the principal sum will bear post judgment interest; otherwise the judgment is reversed. See *Bank of Tupelo v. Collier*, 192 Ga. 409 (1) (15 SE2d 499) (1941).

16. Appellant contends that the trial court committed reversible error in failing to give his request to charge the provisions of OCGA § 13-6-10, which states, "[u]nless otherwise provided by law, exemplary damages shall never be allowed in cases arising on contracts."

The special verdict form makes it plain that the award of punitive damages was based on the finding of tortious conduct. See Division 10, supra. There was evidence of wilful misconduct surrounding any breach which would support the punitive award. *Speir Ins. Agency v. Lee*, 158 Ga. App. 512, 514 (3) (281 SE2d 279) (1981).

17. Lastly, relying upon his previous contentions, appellant enu-

merates that the trial court erred by denying defendants' motion for directed verdict and motion for judgment notwithstanding the verdict. For the reasons given in the preceding divisions, the court did not err in these regards.

18. Appellee's request for imposition of 10 percent damages for frivolous appeal, see OCGA § 5-6-6, is denied.

*Appeal dismissed in part and judgment affirmed with direction. Banke, P. J., and Birdsong, J., concur.*

DECIDED MARCH 2, 1989.

*Elrod & Thompson, Randall A. Constantine,* for appellant.
*Ezra B. Jones III,* for appellee.