A96A2265. MEARS et al. v. GULFSTREAM AEROSPACE CORPORATION et al.
(484 SE2d 659)

RUFFIN, Judge.

Sheila Mears and her husband Luther brought this action for intentional infliction of emotional distress and loss of consortium against Gulfstream Aerospace Corporation ("Gulfstream"), Sheila Mears' former employer, and Harold Smith, her former supervisor in the accounts receivable department at Gulfstream. The trial court granted summary judgment to Gulfstream and Smith, and the Mears appealed. For reasons which follow, we affirm in part and reverse in part.

Summary judgment is appropriate when the court, viewing all the evidence and drawing all reasonable inferences in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). "A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. [Cit.]" Id.

The Mears claim that during Mrs. Mears' employment at Gulfstream from 1982 until 1993, Smith subjected her to constant abuse, stress, and harassment rising to the level of intentional infliction of emotional distress. They further claim that Gulfstream tortiously participated in this conduct because it knew about Smith's actions but took insufficient steps to remedy the situation.

As described by Mrs. Mears, the abuse included a running joke

between Smith and another worker that Mrs. Mears secured her job at Gulfstream by pulling her dress above her knee, fluttering her eyelashes, and flirting during her interview, all of which she denied. Mrs. Mears also testified that Smith and another worker commented after the birth of her second son that a design on her blouse appeared to "lead[] to the Milky Way." In addition, Smith referred to Mrs. Mears as "small chested" and laughed when co-workers placed a shoulder pad cut out of a shirt on her desk in an alleged reference to breast implants. Mrs. Mears further claims that Smith made degrading remarks about the fact that she had undergone a hysterectomy.

According to Mrs. Mears, Smith often made off-color remarks at the office, some of which were directed at her, and suggested at one point that if Mrs. Mears had worn a certain "little purple dress" to a meeting, they would have achieved better results. Smith also told Mrs. Mears on one occasion while walking up stairs that a dress "fit[] [her] body good" and that she should "stand up and turn around and let [him] see how [it] look[ed] on [her]." Finally, Mrs. Mears testified that Smith would put his elbow on her shoulder when looking over her desk to review her work.

Despite these claimed incidents, Mrs. Mears admitted that she and Smith worked fairly well together until approximately October 1992, when Smith accused her of being under the influence of drugs and asked that she take a drug test. Mrs. Mears took the test, returned to her office, and questioned Smith as to why he thought she had taken drugs. In response, Smith allegedly became enraged and beat his fist on a desk. Although Mrs. Mears tested positive for a foreign substance, she was told by a Gulfstream nurse that the positive reading resulted from nerve medication she had taken the previous week. In accordance with Gulfstream policies, Mrs. Mears visited a drug counselor, who informed her that she did not have a problem with drugs but should learn to stand up to Smith.

After the drug testing incident, the working relationship between Mrs. Mears and Smith disintegrated. Mrs. Mears approached several individuals at Gulfstream about the problems she was having with Smith and ultimately spoke with Linda Hildebrandt in the personnel department. Hildebrandt expressed concern for Mrs. Mears' well-being and told her that Gulfstream would take care of the situation. Mrs. Mears and Hildebrandt then met with Smith's superior, Bill Skinner, who was also concerned about Mrs. Mears and told her to take time off from work if she was under too much stress. In late November 1992, Gulfstream moved Mrs. Mears into a position in the pricing department at the same salary and "skill code" as her accounts receivable position. Gulfstream also moved Smith out of the accounts receivable department. Mrs. Mears did not interact with Smith after she left the accounts

receivable department.

Mrs. Mears worked in the pricing department until May 1993, when she was placed on short-term disability for stress and depression. Mrs. Mears' physician subsequently released her to return to Gulfstream on June 1, 1993, but she worked only one day before taking medical leave again. In October 1993, Gulfstream informed Mrs. Mears that her short-term disability benefits were about to expire and that, pursuant to Gulfstream policy, she should return to work to avoid termination. Gulfstream also advised Mrs. Mears that if she did not return to work, she would then be eligible to apply for long-term disability benefits. Mrs. Mears did not return to Gulfstream and was terminated in November 1993. Mrs. Mears subsequently was approved for long-term disability benefits retroactive to November 1993.

The Mears filed this suit in September 1995. Smith and Gulfstream moved jointly for summary judgment, arguing that the two-year statute of limitation had expired on Sheila Mears' claim and that, as a matter of law, no conduct rising to the level of intentional infliction of emotional distress had occurred. The trial court agreed, granting Smith and Gulfstream summary judgment on all claims.

1. In their first enumeration, the Mears argue that the trial court improperly found that the statute of limitation barred Sheila Mears' claim for intentional infliction of emotional distress. According to the Mears, the conduct giving rise to this action was continuous in nature and culminated in Sheila Mears' eventual discharge in November 1993, within two years of this suit. We disagree.

"The test to be applied in determining when the statute of limitations begins to run against an action sounding in tort is in whether the act causing the damage is in and of itself an invasion of some right of the plaintiff, and thus constitutes a legal injury and gives rise to a cause of action. If the act is of itself not unlawful in this sense, and a recovery is sought only on account of damage subsequently accruing from and consequent upon the act, the cause of action accrues and the statute begins to run only when the damage is sustained; but if the act causing such subsequent damage is of itself unlawful in the sense that it constitutes a legal injury to the plaintiff, and is thus a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, however slight the actual damage then may be." (Citations and punctuation omitted.) *Adams v. Emory Univ. Clinic*, 179 Ga. App. 620, 622 (347 SE2d 670) (1986) (physical precedent only); see also *Fox v. Ravinia Club*, 202 Ga. App. 260, 262 (414 SE2d 243) (1991), quoting *Adams*.

A claim for intentional infliction of emotional distress has four elements: (1) intentional or reckless conduct (2) that is extreme and outrageous and (3) causes emotional distress (4) that is severe. *Trim-*

*ble v. Circuit City Stores*, 220 Ga. App. 498, 499 (469 SE2d 776) (1996). Accordingly, damage in the form of severe emotional distress must be sustained before the cause of action accrues. Pursuant to the test set forth in *Adams*, therefore, the statute of limitation for this tort begins to run when the alleged conduct culminates in damage.

Although we cannot clearly ascertain the date on which Mrs. Mears first claims to have experienced emotional distress, the record reveals that stress and depression purportedly stemming from Smith's conduct prevented her from returning to Gulfstream after June 1, 1993. Furthermore, the record reveals that none of Smith's allegedly abusive acts continued during the two years prior to this suit. To the contrary, Sheila Mears had no contact with Smith after she left the accounts receivable department in November 1992, and thus was "no longer subjected to the conduct for which she now seeks remedy." *Adams*, supra at 622. Consequently, we find that Mrs. Mears' cause of action for intentional infliction of emotional distress accrued when Smith's conduct allegedly culminated in damage, which occurred no later than June 1, 1993. See *Fox*, supra; *Hickey v. Askren*, 198 Ga. App. 718, 719 (1) (403 SE2d 225) (1991).

In an effort to avoid summary judgment, the Mears claim that Mrs. Mears' termination in November 1993 constituted the "ultimate act of inflicting emotional distress" and brings her claim within the limitation period. We disagree. The record reveals that, pursuant to Gulfstream policy, Mrs. Mears was terminated only after her short-term disability benefits expired and she was unable to return to work. At that point, Mrs. Mears became eligible for long-term disability, for which she subsequently applied and qualified. We find that Gulfstream's decision to terminate Mrs. Mears in this situation is not the type of "outrageous conduct" necessary to support a claim for intentional infliction of emotional distress. See *Fox*, supra.

Mrs. Mears' claim for intentional infliction of emotional distress, filed in September 1995, was commenced well outside of the two-year period of limitation for personal injuries. OCGA § 9-3-33. Accordingly, the trial court properly granted summary judgment on this claim.

2. In their second enumeration, the Mears argue that the trial court improperly granted Smith and Gulfstream summary judgment on Mr. Mears' derivative claim for loss of consortium, which stems from his wife's personal injury claim. See *Elwell v. Haney*, 169 Ga. App. 481 (313 SE2d 499) (1984). Although the statute of limitation defeated Sheila Mears' claim for intentional infliction of emotional distress, Luther Mears can recover for loss of consortium if his wife could have recovered absent the statute of limitation bar. Id.

(a) Recognizing that a four-year limitation period governs the loss of consortium claim, see OCGA § 9-3-33, the trial court con-

cluded that the only allegedly improper conduct occurring in the four years prior to the lawsuit was the October 1992 drug testing incident. The trial court further determined that, as a matter of law, Smith's conduct during this incident was not extreme or outrageous, and thus would not support Mr. Mears' loss of consortium claim.

We disagree that the October 1992 incident should be viewed in isolation. Georgia recognizes the theory of continuing tort, which applies "where any negligent or tortious act is of a continuing nature and produces injury in varying degrees over a period of time." *Everhart v. Rich's, Inc.*, 229 Ga. 798, 802 (2) (194 SE2d 425) (1972) (limited to personal injury actions by *Corp. of Mercer Univ. v. Nat. Gypsum Co.*, 258 Ga. 365, 366 (2) (368 SE2d 732) (1988)). Under this theory, the statute of limitation does not begin to run "until such time as the continued tortious act producing injury is eliminated." *Everhart*, supra at 802 (2).

Although we have been reluctant to apply this theory broadly, we conclude that it is applicable here. We previously have indicated that a series of acts allegedly causing emotional distress should be viewed cumulatively, rather than in isolation. See *Fox*, supra at 261; *Anderson v. Chatham*, 190 Ga. App. 559, 567 (8) (379 SE2d 793) (1989). Claimants bear a heavy burden in establishing the type of extreme and outrageous conduct necessary to sustain a claim for intentional infliction of emotional distress. *Bridges v. Winn-Dixie Atlanta*, 176 Ga. App. 227, 229 (1) (335 SE2d 445) (1985). In cases involving a series of acts allegedly producing emotional distress, one incident "might not, taken in isolation, rise to a level of conduct actionable under the law for emotional distress." *Chatham*, supra at 567. Viewed cumulatively, however, that incident in combination with a claimed pattern of conduct may support the cause of action. Id.

We find that there is evidence that the alleged intentional infliction of emotional distress is continuing in this case. Accordingly, the October 1992 drug testing incident should be considered in the context of the prior alleged pattern of harassment and abuse.

(b) "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law. [Cit.] If the evidence shows that reasonable persons might find the presence of extreme and outrageous conduct and resultingly severe emotional distress, the jury then must find the facts and make its own determination. [Cit.]" *Yarbray v. Southern Bell Tel. &c. Co.*, 261 Ga. 703, 706 (2) (409 SE2d 835) (1991). To support the emotional distress allegation, and thus sustain Mr. Mears' loss of consortium claim against Smith, Smith's conduct "must have been so abusive or obscene as naturally to humiliate, embarrass, frighten, or extremely outrage [Mrs. Mears]." *Moses*

*v. Prudential Ins. Co. &c.*, 187 Ga. App. 222, 225 (369 SE2d 541) (1988).

Mere tasteless, rude or insulting social conduct will not give rise to such a claim. Id. " 'There is no occasion for the law to intervene in every case where someone's feelings are hurt.' " Id. As we previously have found, however, " 'the existence of a special relationship in which one person has control over another, as in the employer-employee relationship, may produce a character of outrageousness that otherwise might not exist.' [Cits.]" *Coleman v. Housing Auth. of Americus*, 191 Ga. App. 166, 169 (1) (381 SE2d 303) (1989).

Considering the totality of the circumstances, we conclude that the Mears' evidence is sufficient to survive summary judgment on the loss of consortium claim against Smith. Viewing the evidence most favorably to the Mears, a jury could reasonably find Smith's alleged sexual innuendo and pattern of other conduct to be outrageous and extreme, rather than merely rude or insulting. See id. Mrs. Mears' admission that she worked well with Smith until the October 1992 incident and appellees' argument that the described conduct was insufficient to cause harm "belittle but do not defeat the claim." Id. at 169.

Furthermore, the record presents some evidence that Mrs. Mears' experience at Gulfstream resulted in a loss of companionship and services for Mr. Mears. "A claim for loss of consortium is based on the loss of a property right growing out of the marriage relationship, and includes the exclusive right to the services of the spouse and to the society, companionship, and conjugal affection of each other." (Citations and punctuation omitted.) *Sevcech v. Ingles Markets*, 222 Ga. App. 221, 225 (6) (474 SE2d 4) (1996). Accordingly, we find that the trial court improperly granted Smith summary judgment on Mr. Mears' derivative loss of consortium claim.

(c) In contrast, Gulfstream's conduct will not support the loss of consortium claim brought against it. An employer cannot be vicariously liable for an employee's intentional harassment of another employee unless the employer ratifies the conduct. *Trimble*, supra at 501; *B. C. B. Co. v. Troutman*, 200 Ga. App. 671, 672 (1) (409 SE2d 218) (1991). If the employer knows about the employee's conduct and responds inadequately, however, liability for intentional infliction of emotional distress may arise. *Trimble*, supra.

We find no evidence that Gulfstream "ratified" Smith's alleged conduct or that it knew about the conduct until after the October 1992 drug testing incident, when Sheila Mears reported the problems she had been having with Smith. The Mears claim that Gulfstream "was aware of" Smith's behavior, such as his comments about how Mrs. Mears' clothing fit her body. The Mears have cited no evidence, however, that Mrs. Mears reported the conduct to Gulf-

stream before October 1992. On the contrary, it appears from the record that Gulfstream became aware of the alleged incidents and discussed them with Smith after Hildebrandt met with Mrs. Mears subsequent to October 1992. At that point, Gulfstream took steps to separate Smith and Mrs. Mears by transferring each out of the accounts receivable department.

Rather than participating in Smith's conduct as the Mears claim, Gulfstream expressed concern for Mrs. Mears' well-being and attempted to remedy the situation by moving her to a different department at the same skill level and rate of pay. As a matter of law, we find no "outrageous" or "extreme" conduct in Gulfstream's response to Smith's alleged behavior.[1] Accordingly, the trial court properly granted summary judgment to Gulfstream on Mr. Mears' claim for loss of consortium.

*Judgment affirmed in part and reversed in part. Johnson, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED FEBRUARY 20, 1997 —
RECONSIDERATION DENIED MARCH 21, 1997 — 

*Clark & Clark, Fred S. Clark*, for appellants.
*Stanford A. Hines*, for appellees.

---

[1] Mrs. Mears claimed that in addition to Smith's conduct, she also was subjected on one occasion to harassment from another Gulfstream employee. She testified, however, that a director at Gulfstream confronted that employee about the inappropriate conduct, required him to apologize to her, and stated that any further incidents would result in his termination. Mrs. Mears was satisfied with the way in which the incident was handled. We find no "outrageous" or "extreme" conduct in Gulfstream's response to this incident.