**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 99-10917

_____

D. C. Docket No. 97-00908-1-CV-ODE

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 26, 2000
THOMAS K. KAHN
CLERK

CATHY D. DURLEY,
JAMES DURLEY,

Plaintiffs-Appellants,

versus

APAC, INC.,
THEODORE J. RAPALLO,

Defendants-Appellees,

DOUGLAS C. BAIR,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 26, 2000)

Before BIRCH, FAY and KRAVITCH, Circuit Judges.

BIRCH, Circuit Judge:

This case presents the question of whether, in a Title VII sex discrimination suit, appellant Cathy Durley presented evidence of pretext sufficient to create a question of fact for the jury. We hold that she did, and accordingly AFFIRM IN PART and REVERSE IN PART the district court's grant of summary judgment.

## I. BACKGROUND

Durley brought suit against her employer, APAC, Inc. ("APAC"), and her supervisor, Theodore Rapallo, alleging sex discrimination, violation of the Americans with Disabilities Act ("ADA"), and retaliation for the filing of an EEOC charge.[1] Durley also asserted a state law claim for intentional infliction of emotional distress, and her husband brought a related claim for loss of consortium. The district judge granted summary judgment to APAC and Rapallo on all counts.

Durley was employed by APAC at their Plant Services Division from 1983 until she was placed on long-term disability in 1995. Plant Services employed between 15 and 20 people throughout the duration of Durley's employment there. Initially hired as a secretary, Durley was promoted to Assistant Purchasing Agent in 1984. In that position, she shared an office with, and was supervised by, Douglas Bair. Durley performed accounting functions and also assisted Bair with

---

[1]Durley also sued her former supervisor, Douglas Bair, but later dismissed those claims.

purchasing.  After her promotion, Bair made comments to Durley that women should not perform certain kinds of work, particularly in the military.  He smoked in the office and let the ashes from his cigarettes drop on Durley's clothes and desk, despite his awareness that cigarette smoke aggravated Durley's migraines.  Bair also repeated graphic stories from the news involving sexual assaults against women and abuse of children.  Durley complained to Rapallo about Bair's behavior.  Bair was required to smoke elsewhere and the building was designated a smoke-free environment.

In June 1993, while Rapallo was away, a confrontation occurred in which Bair yelled at Durley and approached her in a threatening manner.  Durley went home for the day and did not return until a few days later when Rapallo was back in the office.  As a result of the confrontation, Durley's office was moved and she was told to report to Rapallo instead of Bair.  Her title was changed to Accountant.

In 1994, Bair retired.  Durley applied for his position of Purchasing Agent. Over time, she had performed many of the job functions and acted as Purchasing Agent during Bair's absences from work.  There was no written job description for the position. At around the same time, APAC headquarters decided to close the fabrication workshop at the Plant Services facility.  Jeff Warnock worked in the fabrication workshop.  Rapallo decided to consolidate the two positions and hired

Warnock to be the new Purchasing Agent. Warnock had no office or purchasing experience and did not have a high school diploma. Durley timely filed an EEOC complaint alleging failure to promote on the basis of gender.

At the EEOC's request, APAC, through Rapallo, created a job description for the Purchasing Agent position. The description emphasized the warehouse and fabrication skills possessed by Warnock, rather than the administrative duties that were the main functions of the job as performed by Bair prior to his retirement.

Durley was diagnosed with Chronic Fatigue Syndrome ("CFS") in the early 1990s, which required her to take time off from work for doctor's appointments and sometimes caused her to be late to work. Stress aggravates the symptoms of CFS, which may include migraines, high blood pressure and fever. After Durley filed her EEOC charge, she felt harassed by Rapallo because of her need to be absent due to her condition. Her pay was never docked and time off was never refused, but Durley felt her symptoms were aggravated by workplace induced stress.

On 7 June 1995, when APAC employees received raises, Durley only received a cost of living increase. All other employees except Warnock received higher raises. She amended her EEOC charge to include claims of disability

discrimination and retaliation. Durley went on long-term disability on 8 June 1995.

## II. DISCUSSION

We review the district judge's grant of summary judgment de novo. Chapman v. AI Transport, ___ F.3d 105, 117 (11th Cir. 2000) (en banc). Summary judgment is only appropriate when, viewing the evidence in the light most favorable to the non-moving party, no genuine issue of material fact exists. Id. See also Fed.R.Civ.Pro. 56(c). We address each of Durley's claims in turn.

A. Title VII Sex Discrimination

Durley asserts that APAC failed to promote her to the position of Purchasing Agent because of her gender.[2] A Title VII plaintiff may prove her case by direct or circumstantial evidence. Combs v. Plantation Patterns, 106 F.3d 1519, 1527 (11th Cir. 1997). Because Durley relies on circumstantial evidence to allege discrimination, we apply the analytical framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas Dep't of Community Affairs v. Burdine, 450 U.S.

---

[2]Durley also claimed a Title VII violation for hostile work environment. This claim was without merit, and summary judgment is affirmed without further discussion.

248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). Accordingly, Durley bears the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas Corp., 411 U.S. at 802, 93 S.Ct. at 1824. In other words, she must demonstrate that: (1) she is a member of the protected class; (2) she applied and was qualified for the position; (3) that she was not hired; and (4) the position was awarded to an equally or less qualified employee who was not a member of the protected class. Alexander v. Fulton County, Ga., 207 F.3d 1303, 1339 (11th Cir. 2000). Once a prima facie case is established, a presumption of unlawful discrimination is established. Combs, 106 F.3d at 1528 (quoting Burdine, 450 U.S. at 254, 101 S.Ct. at 1094). The burden then shifts to APAC to provide a legitimate, non-discriminatory reason for its hiring decision. Id. See also Chapman, ___ F.3d at 118. If such a reason is articulated, the plaintiff then "has the opportunity to discredit the defendant's proffered reasons for its decision." Combs, 106 F.3d at 1528. In other words, Durley must provide sufficient evidence to raise a question of fact as to whether APAC's proffered reason is pretextual.

Durley has established a prima facie case of employment discrimination, and APAC concedes that point. She is female, she applied for the position of Purchasing Agent, and Rapallo and Bair testified that she was qualified for the position of Purchasing Agent. The position was awarded to Warnock, who was the

6

warehouse foreman prior to his promotion to Purchasing Agent. APAC asserts, however, that Durley has failed to establish sufficient evidence of pretext to rebut APAC's proffered non-discriminatory reason for hiring Warnock instead of Durley. APAC asserts that, at the time that Bair retired and a replacement was needed to fill his position, the warehouse was being closed, so Rapallo decided to consolidate the functions of Purchasing Agent and warehouse foreman into one position and awarded it to Warnock because he was more qualified than Durley to fill the new position.

In his Recommendation and Report, the magistrate judge found that Durley had provided sufficient evidence of pretext to send the Title VII discrimination claim to a jury. Relying on Batey v. Stone, 24 F.3d 1330 (11th Cir. 1994), the magistrate judge found that APAC's post-hoc formulation of a job description that emphasized Warnock's warehouse and fabrication skills, combined with Warnock's lack of administrative or purchasing experience, presented sufficient evidence of pretext to raise a material question of fact. The district judge disagreed and granted summary judgment for APAC, reasoning that Durley had failed to provide evidence that the job description was an inaccurate reflection of Warnock's actual duties as Purchasing Agent.

We agree with the magistrate judge that the Title VII claim should have been presented to the jury. Durley presented evidence that she was qualified for the position and that Bair considered her to be familiar with 85% of the duties of the Purchasing Agent. Deposition testimony also demonstrated that Warnock had no formal administrative or purchasing experience. Indeed, Durley testified in her deposition that she assisted in training Warnock after Bair retired. A reasonable jury could conclude that Durley was more qualified to handle the administrative and purchasing duties performed by the Purchasing Agent.

APAC alleges, however, that the newly consolidated position required different skills which made Warnock the more qualified candidate. APAC presented a job description to the EEOC which was created after the discrimination claim was filed, because APAC claimed that no job descriptions existed for positions in Plant Services. Bair stated, however, that he prepared a list for Rapallo of what the duties of the Purchasing Agent would be if the jobs were consolidated, and that only 1 percent of the duties would involve fabrication and simple welding. Bair also understood that the Purchasing Agent was to handle warehouse duties because the shipping/receiving clerk position was to be eliminated along with the warehouse foreman position. Durley presented evidence that a shipping/receiving clerk was hired after Warnock became the Purchasing

8

Agent. The district court erred in finding that no evidence was presented to contradict APAC's provided job description.

In Batey, the plaintiff's supervisor decided to consolidate two positions and created a qualifications matrix for the new job that emphasized the skills of one position over another position, with the result that Batey was not awarded the promotion. Id. at 1334-35. We found that summary judgment for the defendant was improperly granted in Batey, because the evidence demonstrated that Batey had more relevant qualifications and all three men who had previously occupied her position had received the promotion. Id. While the evidence in Durley's case is not as strong, it is sufficient to create a question of fact for the jury, because discriminatory intent could be inferred from APAC's decision to emphasize Warnock's warehouse skills over the purchasing and administrative skills possessed by Durley in awarding him the position. APAC's argument that no job description existed is contradicted by Bair's testimony that he created a list of skills at Rapallo's request. The further evidence that a warehouse shipper/receiver was hired after Warnock assumed the position of purchasing agent creates further doubt about whether the job description created by APAC is accurate, or designed to make Warnock appear as qualified as Durley. We find that Durley presented sufficient evidence to raise a question of fact as to whether APAC's proffered non-

9

discriminatory reason for hiring Warnock was pretextual, and, accordingly, we REVERSE the district judge's grant of summary judgment to APAC on the failure to promote claim.

B. Disability Discrimination

Durley also asserted a claim for disability discrimination based on APAC's failure to promote her to purchasing agent. The burden of proof for an ADA claim is also based on the framework set forth in McDonnell Douglas Corp. See 411 U.S. at 802, 93 S. Ct. at 1824. In order to establish a prima facie ADA violation, Durley must demonstrate that she is a qualified individual with a disability and was discriminated against because of that disability. Witter v. Delta Air Lines, Inc., 138 F.3d 1366, 1369 (11th Cir. 1998). In order to meet the definition of disabled, Durley must show that she was substantially limited in a major life activity as a result of a physical or mental impairment. 42 U.S.C. § 12102(2). Durley argues that she is limited in the major life activity of working as a result of her CFS. Her own testimony, however, defeats her claim.[3] Durley testified that, even when her condition was allegedly being aggravated by work-related stress, she "was able to

---

[3]The parties do not contest that Durley is now fully disabled in the life activity of working. The relevant time period at issue is the period during which Bair retired and Warnock was promoted, during which period Durley continued to work.

perform the job . . . The work got done always." Durley Depo. at 208-09. The district judge properly found that Durley was not disabled within the meaning of the statute at the time of the alleged failure to promote, and summary judgment on the ADA claim was appropriate.

C. Retaliation and Constructive Discharge

Durley claims that she was constructively discharged in retaliation for her filing of an EEOC charge against APAC. 42 U.S.C. § 2000e-3(a) prohibits such retaliation. In order to establish a prima facie case of retaliation, "a plaintiff must show that (1) she [filed an EEOC charge]; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1454 (11th Cir. 1998). Durley meets the first element, as she did file an EEOC charge.

The adverse employment action of which Durley complains is constructive discharge. She argues that Rapallo harassed her regarding medically necessary absences and tardiness and that his harassment increased after she filed her EEOC charge. She also points to her treatment by fellow employees, and the comparative size of her raise as further evidence that she was constructively discharged. In order to successfully state a claim, however, Durley was required to "demonstrate that working conditions were 'so intolerable that a reasonable person in her

11

position would have been compelled to resign.'" Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 (11th Cir. 1997). That standard has not been met, and accordingly, summary judgment was appropriate.

Even if the actions of which Durley complains were sufficient to create intolerable working conditions, the problem of causation remains. Durley did not establish that other employees besides Rapallo had knowledge of her EEOC charge. Furthermore, the increase in harassment by Rapallo, which consisted of him questioning Durley about the reasons for her absences, increased at the same time as a corresponding increase in absences. Causation has also not been established. Accordingly, summary judgment on the retaliation and constructive discharge claim was appropriate.

D. State Law Claims

Durley also sought damages for intentional infliction of emotional distress, and her husband sought damages for loss of consortium. The district court properly granted summary judgment on the intentional infliction of emotional distress claim. Durley failed to establish that the conduct of Rapallo or APAC was extreme and outrageous. See Mears v. Gulfstream Aerospace Corp., 225 Ga. App. 636, 484 S.E.2d 659, 663 (Ga. App. 1997) (defining elements of the tort of intentional infliction of emotional distress). The burden on a plaintiff asserting a

12

claim for intentional infliction of emotional distress is heavy. Id. at 664. Rudeness and insensitivity that result in hurt feelings will not, in and of themselves, establish liability. See id. Considering the totality of the circumstances, Durley has not established that such extreme and outrageous behavior occurred.

James Durley's loss of consortium claim must also fail. Loss of consortium is a derivative tort, and no liability can attach where the defendant owes no tort liability to the spouse. See Hightower v. Landrum, 109 Ga. App. 510, 514, 136 S.E.2d 425, 428 (Ga. App. 1964). The Title VII failure to promote claim does not provide a basis for derivative liability for loss of consortium. Summary judgment was properly granted on the loss of consortium claim.

### III.  CONCLUSION

The district judge granted summary judgment for Rapallo and APAC on all grounds. We REVERSE the grant of summary judgment on the Title VII failure to promote claim and AFFIRM the grant of summary judgment on all other claims, and REMAND for further proceedings consistent with this opinion.