[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 9, 2006
THOMAS K. KAHN
CLERK

No. 05-10744

_____

D. C. Docket No. 00-03417-CV-JOF-1

TRACEY L. TOMCZYK,

Plaintiff-Appellant,

versus

JOCKS & JILLS RESTAURANTS, LLC,
JOSEPH R. ROLLINS,
JOCKS & JILLS JACKSONVILLE, INC.,
JOCKS & JILLS DULUTH, INC.,
JOCKS & JILLS GALLERIA, INC., et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(August 9, 2006)**

Before CARNES, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

This is a sex and race discrimination case brought by a former upper-management employee, Tracey Tomczyk, against the sports bar/restaurant chain Jocks & Jills and against Joe Rollins, who is the Secretary, Treasurer, Chairman of the Board, and controlling shareholder of Jocks & Jills. Tomczyk also brought state law claims, including intentional infliction of emotional distress and negligent retention. The district court granted summary judgment in favor of the defendants on some of Tomczyk's claims. At trial, the court entered a directed verdict for the defendants on some of her claims, and the jury returned a verdict for J&J on the remaining ones.

During the summary judgment stage of the proceedings, the magistrate judge wrote a 103-page report and recommendation. The district court later noted that "no party has contended in objections that the magistrate judge found any facts in clear error," and it accepted the magistrate judge's version of the facts for summary judgment purposes. The R&R set out detailed findings and the parties have not actually contested those findings for purposes of this appeal, so we will accept them as well. We will not recount them at length in this opinion because the parties and district court are well aware of them.

2

# I.

In her complaint against J&J and Rollins, Tomczyk claimed that the defendants did the following: discriminated against her on the basis of her sex, subjected her to a sexually hostile work environment, and retaliated against her, all in violation of Title VII, discriminated against her on the basis of race, and subjected her to a racially hostile work environment in violation of Title VII and 42 U.S.C. § 1981, violated the Equal Pay Act, and intentionally inflicted emotional distress. She also claimed that defendant J&J negligently retained and supervised Rollins and that both defendants were liable for assault and battery and invasion of privacy.

After discovery, J&J and Rollins filed motions for summary judgment. The district court entered an order granting those motions in part. The court granted both defendants summary judgment on the following claims: disparate treatment racial harassment and hostile environment racial harassment under Title VII and § 1981; disparate treatment sexual discrimination under Title VII; disparate wages under the Equal Pay Act and under Title VII; assault and battery; and invasion of privacy. The court also granted Rollins summary judgment on the remaining Title VII claims against him.

The district court denied J&J's motion for summary judgment on Tomczyk's claims for hostile environment sexual harassment and retaliation under Title VII and for negligent retention. It also denied both defendants' motions for summary judgment on the intentional infliction of emotional distress claim. The parties proceeded to trial on those four claims. During trial the court granted J&J's motion for directed verdict on Tomczyk's retaliation claim under Title VII, and it granted both defendants summary judgment on statute of limitations grounds on her claim for intentional infliction of emotional distress. That disposed of the last remaining claims against Rollins, leaving only J&J to face the jury.

Thereafter the jury rendered a verdict in favor of J&J on the remaining claims against it—Title VII hostile environment sexual harassment and negligent retention. The jury verdict included the following responses to these written interrogatories:

> 1. Plaintiff was subjected to sexually offensive acts or statements because of her gender. Yes.
>
> 2. Plaintiff personally believed the workplace environment to be hostile or abusive. Yes.
>
> 3. The acts or statements were dangerous or unwelcome and had not been invited or solicited, directly or indirectly, by plaintiff's own acts or statements. Yes.

4

4. The acts or statements resulted in a work environment that was so permeated with discriminatory intimidation, ridicule or insult of sufficient severity or pervasiveness that it materially altered the conditions of plaintiff's employment. No.

The jury also found that J&J was not liable for negligent retention. Because the court had directed a verdict for the defendants on the retaliation and intentional infliction of emotional distress claims and the jury had determined that J&J was not liable for hostile environment sexual harassment, there was no underlying tort that would support a negligent retention claim.

Tomczyk filed a motion for a new trial, arguing that she deserved one for three reasons. Tomczyk's first contention was that the jury should have been allowed to determine whether her termination was a product of sexual harassment or retaliation, or both. The court had determined as a matter of law that Tomczyk's termination was not retaliatory, but that Rollins had instead fired her because of pay raises that she gave herself and two other managers in violation of Rollins' written directive to give them only after his written approval. The court noted that Georgia is an at will employment state, and even though Tomczyk was able to show temporal proximity based on her verbal complaint about "inappropriate behavior," she "has no positive evidence that the morning conversation was linked to the later termination." The court concluded:

5

> No reasonable juror could draw an inference from these circumstances that Plaintiff was fired because she was opposing unlawful practices. To the contrary, if Plaintiff's testimony is to be believed, she had been complaining about inappropriate behavior for nine years and had never been fired until June 14, 1999, the day the pay issue came to a head.

The court went on to say that Tomczyk "presented no positive evidence that Rollins' decision to terminate [her] was based on anything other than his disagreement with her about the salary increases." The court also noted that Tomczyk should not have relied on Desert Palace, Inc, v. Costa, 539 U.S. 90, 123 S. Ct. 2148 (2003), in her motion for a new trial because she did not plead her case as a mixed motive case, and it was too late to do so at the motion for new trial stage.

Tomczyk's second new trial contention was that the statute of limitations should not have been applied to bar her intentional infliction of emotional distress claim. In doing so the court had relied on Waters v. Rosenbloom, 490 S.E.2d 73 (Ga. 1997), and rejected Tomczyk's interpretation of Everhart v. Rich's, Inc., 194 S.E.2d 425 (Ga. 1972), and Mears v. Gulfstream Aerospace Corp., 484 S.E.2d 659 (Ga. Ct. App. 1997).

Finally, Tomczyk contended that the jury's finding that discriminatory conduct did not affect the conditions of her employment was against the

overwhelming weight of the evidence.  The court disagreed, concluding that Tomczyk had not established a sexual harassment claim because she had failed to prove that the material terms and conditions of her employment were adversely affected.

## II.

In this appeal Tomczyk has raised seven issues.  First, she contends that we should reverse the district court's grant of summary judgment in favor of J&J on her hostile environment racial harassment claim because Rollins' alleged conduct constituted racial harassment as well as sexual harassment.  Second, she contends that the district court erroneously granted summary judgment against her on the disparate treatment racial discrimination claim based on its overly narrow definition of comparators.  Third, she appears to contend that we should reverse the jury's verdict for J&J on her sexual harassment claim because the jury should have been permitted to consider her termination as part of that claim, which would have enabled her to show a tangible employment action under Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275 (1998).  Fourth, she contends that the district court improperly directed the verdict on the issue of whether her termination was retaliatory, arguing that she presented enough evidence for a reasonable juror to believe that the defendant's stated reason for firing her was

pretextual. Fifth, she contends that the district court improperly directed the verdict on that same issue because she showed that the defendant had at least a mixed motive for her termination. Sixth, she contends that the statute of limitations does not bar her intentional infliction of emotional distress claim. She argues that even if her cause of action based on some of the alleged conduct is time-barred, under Georgia law the continuing tort doctrine saves her claim as to subsequent conduct. Seventh and finally, she argues that her claim for negligent retention must be reinstated if we reinstate her sexual harassment or intentional infliction of emotional distress claims.

At oral argument, we informed the parties that there were problems with the positions and arguments on both sides of the appeal and that under the circumstances it would be better if they settled their case. After that we issued an order directing them to participate in mediation. They did so but were unable to resolve their dispute. Here is our resolution of it.

## III.

We review <u>de novo</u> any grant of summary judgment or mid-trial judgment as a matter of law. <u>Jones v. Dillard's, Inc.</u>, 331 F.3d 1259, 1262 (11th Cir. 2003); <u>Munoz v. Oceanside Resorts, Inc.</u>, 223 F.3d 1340, 1344 (11th Cir. 2000). The same requirements of proof and the same analytical framework apply to Title VII

and § 1981 claims, so we "explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

We will take up Tomczyk's contentions in the order in which she has stated them.

## A.

We first address Tomczyk's contentions that the district court erred in granting summary judgment in favor of J&J on her racial harassment hostile environment claim. To establish a hostile work environment claim, a plaintiff must show: "(1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee . . . ; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002).

Concluding that no reasonable factfinder could find that the alleged harassment was based on Tomczyk's race, the district court granted summary judgment on this claim, explaining:

> The court has carefully considered whether these particular allegations sound in racial—or sexual—harassment. If Rollins' comments were critical of Plaintiff for violating some taboo prohibiting white women from having a sexual relationship with an African-American male, the court might find that Rollins' comments were based on Plaintiff's race. However, Rollins' comments are not of that character. Rather, Rollins conveyed his opinions about the relative quality of Plaintiff's experiences. The court determines that no reasonable juror following the law could conclude that Rollins' comments are because of Plaintiff's race, and thus, Plaintiff has not stated a claim for racial harassment.

(emphasis in original).

We disagree. The evidence proved a slew of vulgar and harassing comments that continued over a period of years established genuine issues of material fact exist concerning whether the harassment she suffered was based on race, specifically the race of the man with whom she was romantically involved. A reasonable jury could have concluded that Rollins' comments were about that interracial relationship, and harassment based on an interracial relationship is forbidden under Title VII. Parr v. Woodmen of the World Life Ins. Co., 791 F.2d

888, 890–92 (11th Cir. 1986) (holding that participation in an interracial relationship places a plaintiff in a protected class under Title VII and § 1981). Tomczyk presented enough evidence to permit a jury to find that the harassment inflicted on her was because of race.

To establish her claim, Tomczyk's evidence must also establish that the harassment was severe or pervasive. See Miller, 277 F.3d at 1276–77 (applying a totality of the circumstances test and holding that a reasonable jury could have concluded that name-calling and ethnic slurs were frequent, severe, and humiliating). To determine whether a working environment is hostile or abusive we must evaluate "all the circumstances." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 371 (1993). In doing so, we consider these factors: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id.; see also Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1521–22 (11th Cir. 1995).

At this point in the proceedings, Tomczyk's position is undermined by the fact that a jury has already had an opportunity to consider whether the sexual harassment that she allegedly suffered was severe or pervasive enough to alter the terms and conditions of her employment, and the jury found that it was not. This

11

is an unusual case because all of the racial harassment Tomczyk suffered was a subset of the sexual harassment to which she was subjected. If the sexual harassment was not sufficiently severe or pervasive, it follows that the subset of it which was racial in nature was not either. Given that, we conclude that any error the district court may have committed in granting summary judgment against Tomczyk on her racial harassment claim was harmless.

B.

In regard to Tomczyk's disparate treatment racial discrimination claim, we must determine whether her termination, which clearly qualifies as an adverse employment action, was the result of racial discrimination or instead resulted from the fact that she raised her salary and that of two other managers without Rollins' written permission.

A plaintiff may establish a prima facie case for disparate treatment in a race discrimination case using either direct or circumstantial evidence. EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000). Direct evidence is that which "establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." Id. Using circumstantial evidence, however, the plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her

employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job. Id. If the plaintiff satisfies these elements, the defendant must show a legitimate, non-discriminatory reason for its employment action. Id. If it does so, then the plaintiff must offer evidence to support a finding that the reason provided by the defendant is a pretext for unlawful discrimination. Id. If the plaintiff does that, she can avoid judgment as a matter of law against her. See Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997).

Tomczyk contends that she has presented direct evidence of discrimination, and the McDonnell Douglas burden-shifting analysis does not apply. See Joe's Stone Crab, Inc., 220 F.3d at 1286. She argues that Rollins used racial slurs to describe her physical appearance and to characterize her as attractive to African American men. She contends that there is direct evidence that he found interracial relationships repulsive; therefore, there is direct evidence that her termination was the result of racial discrimination. We disagree. We have explained that "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004) (quotation marks omitted); see also Haynes v. W.C. Caye & Co., Inc., 52

F.3d 928, 931 (11th Cir. 1995) ("[A] statement that members of a racial minority in general or women in general are simply not competent enough to do a particular job would seem to be a classic example of direct evidence."). "If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence." Wilson, 376 F.3d at 1086.

Tomczyk does not contend that Rollins ever explicitly threatened to fire her because of her interracial relationship or said that was why he was firing her. According to her, Rollins did threaten to fire her if she kept hiring her boyfriend for J&J's promotional events, but that is a different matter. Any business has the right to insist on conflict-free decision making about the expenditure of its funds. Not only that, but Tomczyk did quit hiring her boyfriend. Any racially derogatory comments that Rollins made were not directly linked to the termination decision, so they can serve as circumstantial evidence at best. Her claim is to be evaluated using the circumstantial evidence, burden-shifting model. See Joe's Stone Crab, Inc., 220 F.3d at 1286.

J&J contends that Tomczyk has failed to establish a prima facie case under that model, because she has not shown that similarly situated employees outside of her protected class were treated more favorably than she was. As we have explained, Tomczyk was in a protected class because she was involved in an

interracial relationship. See Parr, 791 F.2d at 890. J&J argues that the district court properly required Tomczyk to show as a comparator a J&J employee engaged in a same-race relationship who engaged in the same conduct and was not fired. It asserts that Rollins even-handedly applied J&J's anti-fraternization policy which did not tolerate romantic relationships between J&J employees or employees and contractors, regardless of race.

The anti-fraternization policy, however, is not a proper way to define comparators because no one contends that Tomczyk was terminated for violating that policy. The defendants' stated reason for firing her was that she violated Rollins' policy requiring that increases in salaries must be approved by him in writing. The proper comparator would be another J&J employee, outside of Tomczyk's protected class, who violated that same policy and was not fired.

Tomczyk contends that Trang Do, a female subordinate, is such a person. Do, who worked in payroll, increased some salaries when Tomczyk told her to do so even without Rollins' written permission. Do was not fired as a result of her actions. J&J contends that Do is not an appropriate comparator because Tomczyk was her supervisor, and she was merely acting on Tomczyk's orders.

"When a plaintiff alleges discriminatory discipline, to determine whether employees are similarly situated, we evaluate whether the employees are involved

15

in or accused of the same or similar conduct and are disciplined in different ways." (quotation marks omitted). Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006). "When making that determination, we require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Id. (quotation marks and alteration omitted).

Do's alleged misconduct was not "nearly identical" to Tomczyk's. See id. Although she did violate the same J&J policy that Tomczyk violated, she acted under direct orders from Tomczyk. Not only that, but Tomczyk also left Rollins an arguably rude note regarding the pay raises, and he viewed that note as insubordinate. Do did not leave Rollins an insubordinate note. Tomczyk's note, combined with her deliberate decision to raise the salaries despite Rollins' direct order not to do so without his written approval, adds up to the conclusion that Tomczyk's conduct was significantly different from that of Do, who was only following Tomczyk's orders and did not compound her offense with an inappropriate note. Because Do is not a valid comparator, Tomczyk has failed to establish a prima facie case of racially disparate treatment. See Joe's Stone Crab, Inc., 220 F.3d at 1286. The district court did not apply an overly narrow definition

16

of comparators, and it properly granted summary judgment for J&J on Tomczyk's racially disparate treatment claim.

C.

Tomczyk's third contention, to the extent we understand it, is that the jury should have been but was not permitted to consider her termination as part of her sexual harassment claim, which she argues would have enabled her to show a tangible employment action.

In Faragher the Supreme Court reiterated that "conduct must be extreme to amount to a change in the terms and conditions of employment." 524 U.S. at 788, 118 S. Ct. at 2284. The Court also stated that "there is nothing remarkable in the fact that claims against employers for discriminatory employment actions with tangible results, like hiring, firing, promotion, compensation, and work assignment, have resulted in employer liability once the discrimination was shown." Id. at 790, 118 S. Ct. at 2284. We have explained that "[w]hen we talk about tangible employment action and hostile environment, what we are or should be talking about are the two alternative ways a plaintiff may establish a basis for the employer's vicarious liability, which is the fifth factor of a Title VII sexual harassment claim." Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1246 (11th Cir. 2004).

Tomczyk does not state her argument in clear terms. The jury did hear evidence about her termination and the circumstances surrounding it during the course of the trial. Although the court directed the verdict against Tomczyk on her retaliation claim, there was nothing to prevent the jury from considering her termination as a factor in deciding her harassment claim. To the extent that Tomczyk is arguing the jury was not permitted to do so by the jury instructions, her argument is barred by her failure to request an instruction to that effect or object to those that were given on this ground.

D.

Tomczyk also contends that the jury should have been permitted to consider her termination as part of her retaliation claim. To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: "(1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision." Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000).

Tomczyk argues that she presented enough evidence for a reasonable juror to believe that the defendants' reasons for firing her were pretextual. J&J contends that there was no causal connection between Tomczyk's protected

18

activity of complaining about harassment and her termination. It argues that intervening factors—Rollins' discovery of the improperly authorized pay raises and the insubordinate note to him from Tomczyk—were the actual reasons for her termination.

Tomczyk responds that Rollins often made contradictory pronouncements and acted inconsistently regarding the policy against pay raises without his written approval. She presented evidence that Rollins had previously given verbal directions to give managers raises and bonuses, and that neither she nor anyone else had been disciplined for doing so without his written approval. There was evidence that on the day Tomczyk was fired, she walked out of a board meeting after complaining about inappropriate, sexually harassing comments that were undermining her authority as a manager. Although she admits that she had complained about those type of comments many times before that day, Tomczyk alleges that her complaint about inappropriate behavior on that day coupled with the action of walking out of the meeting caused the retaliatory termination that followed.

Tomczyk presented enough evidence for a reasonable juror to have found that J&J's stated reasons for firing her were pretextual; a genuine issue of material fact existed regarding whether she was retaliated against in violation of Title VII

after she complained about sexual harassment. The district court erred in not allowing the retaliation claim to go to the jury.

## E.

Tomczyk also contends that she has preserved a mixed motive claim with regard to her termination. The district court found that she had not, and we agree with the district court about that. Tomczyk did not plead or otherwise argue a mixed motive theory, and she voluntarily removed a mixed motive charge from her set of requested jury instructions. She did not object to the failure to give such a charge. She raised the issue for the first time in the motion for new trial, which is too late.

## F.

Tomczyk next contends that the district court erred in concluding that her intentional infliction of emotional distress claim was completely barred by the statute of limitations. She contends that under Georgia's continuing tort doctrine none of the acts about which she complains are barred from consideration by the statute of limitations. She also contends that even if those acts occurring more than two years before she filed her complaint are barred, those that occurred within two years are not.

20

The Georgia Supreme Court recognized the continuing tort doctrine in Everhart v. Rich's, Inc., 194 S.E.2d 425 (Ga. 1972). Everhart involved a family's claims for personal injury and property damage allegedly caused by a set of draperies purchased at Rich's department store. 194 S.E.2d at 427. The draperies were made from fabric composed mainly of "fiberglas," a registered trademark of a glass fiber manufactured by Owens-Corning. Id. The plaintiffs alleged that they hung the draperies in their bedroom and after they became ill years later, they discovered that billions of "fiberglas" particles had broken loose from the draperies and had been carried through the house by the heating system. Id. The plaintiffs also alleged that the defendants had failed to warn them that the material could and would injure human skin. Id. The trial court found that the plaintiffs' claims were barred by the statute of limitations. Id.

The Georgia Supreme Court disagreed. See id. at 427–28. It noted that when continued exposure is caused by continued failure to warn, the tort is of a continuing nature. Id. at 428. Because of the continuing nature of the tort, the statute of limitations does not begin to run until "such time as the continued tortious act producing injury is eliminated, e.g., by an appropriate warning in respect to the hazard." Id. The court held that this theory of continuing tort applied "to those factual situations analogous to the situation here involved where

21

any negligent or tortious act is of a continuing nature and produces injury in varying degrees over a period of time." Id.

Everhart involved a failure to warn. See id. Its facts suggest that there is nothing those plaintiffs, using due diligence, could have done to discover the hazard until they realized that they were ill. See id. The Everhart plaintiffs bought new draperies in 1964; "began to suffer extreme personal discomfort and illness" in 1970 and that same year discovered that they were being injured by the fibers in the draperies; and they filed suit in 1971. Id. at 426–27. The Everhart opinion does support Tomczyk's contention that the continuing tort theory generally applies to her intentional infliction of emotional distress claim. However, that and other Georgia decisions also indicate that a discovery rule applies to her claim. Under that rule discovery of the hazard marks the time from which the limitations period begins to run. See id.

In Waters v. Rosenbloom, 490 S.E.2d 73 (Ga. 1997), a medical malpractice case, the defendant doctor had prescribed Valium and Librium to his patient for eighteen years. After the patient's death, his surviving spouse and the administrator of his estate brought suit for wrongful death. Id. at 75. The plaintiffs alleged that the patient's addiction to the prescribed drugs rendered him incapable of controlling his diabetes, which ultimately led to his death. Id. They argued that

22

the court should apply the continuing tort theory in order to avoid the bar of the five-year medical malpractice statute of repose. Id. The court refused to apply the continuing tort theory, explaining that "Georgia courts have consistently held that . . . a continuing tort cause of action accrues when a plaintiff discovers, or with reasonable diligence should have discovered, both the injury and the cause thereof." Id. There was evidence that the patient's family had recognized as early as 1975 that he was developing a drug problem because of the defendant doctor's prescriptions, and in 1978 the patient even checked himself into the hospital to try to "get off" of the Valium. Id. These problems and the family's concern about them continued into the 1980s, but the lawsuit was not filed until 1995, two years after the patient had died. Id. at 74.

Tomczyk argues that Waters is legally and factually distinguishable from her situation because Waters involved the statute of repose in the Georgia medical malpractice statute of limitations, which places a five-year limitations period on claims beginning from the date of the "negligent or wrongful act or omission," Ga. Code Ann. § 9-3-71(b). Tomczyk contends that the discovery rule in Waters applies only to the medical malpractice statute of limitations and repose and has no application in other circumstances.

We disagree. The Waters opinion does not expressly limit application of the discovery rule to medical malpractice claims or to those involving a statute of repose. Moreover, the Georgia Court of Appeals decision upon which Tomczyk relies for the proposition that the statute of limitations for an intentional infliction of emotional distress claim does not begin to run until the continuing tort stops also applies the discovery rule. See Mears v. Gulfstream Aerospace Corp., 484 S.E.2d 659 (Ga. Ct. App. 1997).

In Mears the court held that the plaintiff's intentional infliction of emotional distress cause of action accrued when the defendant's conduct "allegedly culminated in damage," which occurred no later than the date that the plaintiff was unable to return to work after taking medical leave and being treated by a physician for stress and depression. Id. at 663. Because the plaintiff did not file her claim within two years of the date she discovered the injury, the statute of limitations barred it. Id. at 663–64. The court also held that her husband had a valid loss of consortium claim, but that was because a four-year, rather than a two-year, limitations bar applied to his claim, and some of the allegedly tortious conduct did occur within that longer limitations period. Id. at 664. Although the court stated that "a series of acts allegedly causing emotional distress should be viewed cumulatively, rather than in isolation," it made that statement in the context of

24

determining whether a fact issue existed concerning the extreme and outrageous nature of the conduct, rather than in the context of determining what the limitations period was. See id.

The discovery rule was applied in Everhart, Waters, and Mears, and it applies to Tomczyk's intentional infliction of emotional distress claim. The discovery rule does bar that claim insofar as it is based on the conduct that occurred outside of the limitations period. The district court found that Tomczyk's injuries "manifested themselves at the very latest in November 1998 when she began taking Prozac for depression." The court reasoned that Tomczyk's injury was the "mental stress that necessitated the prescription of Prozac," which "manifested itself, at the latest, as of November 1998." There is no evidence to the contrary.

Tomczyk filed her complaint on December 22, 2000, more than two years after her cause of action accrued with discovery of the injury in November of 1998. Therefore, the district court did not err in holding that Tomczyk's intentional infliction of emotional distress claim was barred by the statute of limitations as to the conduct that occurred before December 22, 1998.

However, conduct occurring after December 22, 1998 is a different matter, because Tomczyk did file her lawsuit within two years of that conduct. There is no basis for concluding that a plaintiff who fails to file her complaint in time to cover

25

all of the tortious conduct inflicted on her is barred from seeking relief for that which is inflicted during the limitations period. The evidence provides a reasonable basis for a jury to find that the conduct to which Tomczyk was subjected during the two years immediately preceding the filing of her lawsuit did amount to intentional infliction of emotional distress. A jury would not be required to find that from the evidence, but the issue should be submitted to a jury. For these reasons, the district court's statute of limitations ruling involving the intentional infliction of emotional distress claim is not error insofar as conduct occurring before December 22, 1998 is concerned, but it is error insofar as conduct occurring on or after December 22, 1998 is concerned.

## G.

Finally, Tomczyk contends that because Georgia law requires a plaintiff to show an underlying tort committed by the negligently retained individual in order to support a negligent retention claim, if we reverse the district court's judgment on her Title VII claims or on her intentional infliction of emotional distress claims, we must reinstate her negligent retention claim. She argues that her negligent retention claim failed based solely on the failure to establish an underlying tort. J&J contends that the jury heard all the evidence and that Tomczyk simply failed to prove a negligent retention claim.

26

Under Georgia law, "a defendant employer has a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's 'tendencies' or propensities that the employee could cause the type of harm sustained by the plaintiff." Munroe v. Universal Health Servs., Inc., 596 S.E.2d 604, 606 (Ga. 2004); see also Eckhardt v. Yerkes Reg'l Primate Ctr., 561 S.E.2d 164, 166 (Ga. Ct. App. 2002) (holding that a negligent retention claim was properly dismissed when there was no underlying tort upon which it could have been based).

As we have discussed, the jury checked the "no" box when asked if J&J was liable for negligent retention. The jury may have checked this box based on its belief that no underlying tort committed by J&J had been proven. In fact, the jury foreperson sent a note to the district court judge asking him, "if we find the defendant not liable of Sexual Harassment/Hostile Work Environment do we have the choice of answering yes to Ne[g]ligent Rentention?" Record Vol. 8 at 227 (scratched out words omitted). The court responded in the negative. Id. That was correct; however, because we have reinstated Tomczyk's retaliation and intentional infliction of emotional distress claims (the latter claim only in part), we also reinstate her negligent retention claim.

27

## IV.

The judgment is **REVERSED** insofar as it involves: the retaliation claim; the intentional infliction of emotional distress claim based on conduct occurring on or after December 22, 1998; and the negligent retention claim to the extent that it involves the other two claims for which we are reversing the judgment. The judgment is in all other respects **AFFIRMED.** The case is remanded to the district court for further proceedings consistent with this opinion.

In sending the case back for another trial, we remind the parties that it is never too late to settle.